# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ALEXYS GRACE O'SHEA DUNCAN, Individually and as a Beneficiary of the Will and Trusts of John J.C. O'Shea Jr., ) ) ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | 2:17-cv-00497-JDL |
| KATHLEEN M. O'SHEA, Individually and as Co-Executor of the Estate of Rita O'Shea, Co-Trustee of the Will and Trusts of John J.C. O'Shea Jr., et al., ) ) ) ) ) ) ) | |
| Defendants. ) | |

## ORDER ON FIELD, MANNING, STONE, HAWTHORNE, & AYCOCK, P.C.'S MOTION TO DISMISS

The Plaintiff, Alexys Grace O'Shea Duncan ("Alexys"), brings this action individually and as a beneficiary of the will and trusts of John J.C. O'Shea Jr., her grandfather, for alleged breaches of fiduciary duties, fraud, and conversion, among other claims, related to the management of the trusts' assets. Defendant Field, Manning, Stone, Hawthorne, & Aycock, P.C. ("Field Manning"), a Texas law firm, moves to dismiss (ECF No. 21) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Alternatively, Field Manning argues that the suit should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3). For the reasons that follow, I conclude that this Court does not have personal jurisdiction over Field Manning and, therefore, dismiss Field Manning as a defendant.

## I. FACTUAL BACKGROUND

The following facts are taken from the Second Amended Complaint and supplemental affidavits in the record. For purposes of this motion, I take as true the facts asserted in the complaint and any undisputed facts asserted by Field Manning.

John J.C. O'Shea, Jr. ("John Jr.") and his wife, Rita O'Shea ("Rita") had four children: John J.C. O'Shea III ("John III"), Kelley A. O'Shea ("Kelley"), Kathleen M. O'Shea ("Kathleen"), and Brian C. O'Shea ("Brian"). The Plaintiff, Alexys, is Kelley's daughter and, therefore, John Jr. and Rita's granddaughter. John Jr. passed away in 1996 and his will was probated in Lubbock County, Texas. John Jr.'s will created two trusts: the O'Shea Family Trust and the O'Shea Marital Trust. Rita inherited half of John Jr.'s community property under Texas probate law, and the other half was apportioned between the two trusts. Rita was the executor of John Jr.'s estate, the trustee of the two trusts, and the primary beneficiary of the two trusts during her lifetime. The claims asserted against Field Manning in this suit arise out of Field Manning's representation of Rita.

After John Jr.'s death, Rita and the Family Trust jointly owned a vacation house in Kennebunkport ("the Maine Property"). In 2009, Rita, individually and as trustee of the Family Trust, conveyed the Maine Property to a Texas limited liability company, Killybegs, LLC, in consideration for a membership interest in the LLC. Field Manning represented Rita in the creation of Killybegs, LLC, and Rita's conveyance of the Maine Property. All of Field Manning's legal services related to the creation of Killybegs, LLC, and the transfer of the Maine Property were performed in Texas. Thus, the documents prepared by Field Manning related to the

LLC and the deed of conveyance were prepared in Texas, and Rita executed the deed in Texas. After the property was transferred to Killybegs, LLC, Attorney Carrissa Cleavinger of Field Manning mailed the deed and a transfer tax form from Texas to the York County Registry of Deeds in Maine for recording. Other than mailing the deed from Texas to the Maine registry for recording, Field Manning had no contact with Maine related to the work that the law firm performed for Rita. None of Field Manning's attorneys are licensed to practice law in Maine.

## II. LEGAL ANALYSIS

### 1. Personal Jurisdiction

"It is axiomatic that, to hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) (internal quotation marks omitted). Where, as here, neither party requests an evidentiary hearing, the District Court uses the prima facie standard to evaluate whether it has personal jurisdiction over a defendant. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under this standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). In conducting this analysis, the Court "take[s] the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts. [The Court] may, of course, take into account undisputed facts put forth by the defendant." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) (internal

3

citation omitted). The burden rests on the plaintiff to demonstrate that personal jurisdiction exists. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" *Baskin-Robbins*, 825 F.3d at 34 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995)). The same is true in a federal question case. *Id.* at 34 n.2 (citing Fed. R. Civ. P. 4(k)(1)(A)). "[W]ith one exception the Rule 4(k) framework does not treat federal question cases differently than cases where a federal court adjudicates state-created rights based on diversity of citizenship jurisdiction." 4 Charles Alan Wright et al., *Federal Practice & Procedure* § 1068.1 (4th ed. 2018). That one exception is set out in Rule 4(k)(2), which authorizes the exercise of personal jurisdiction in federal question cases where a defendant lacks sufficient minimum contacts with "any single state" but has sufficient minimum contacts with the United States as a whole to justify the application of federal law. Fed. R. Civ. P. 4(k) advisory committee's note to 1993 amendment. That exception does not apply here because Field Manning is subject to general personal jurisdiction in Texas, where the law firm maintains its regular business.

To establish personal jurisdiction, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019) (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014)). Because Maine's long-arm statute is coextensive with the Due Process Clause of the 14th Amendment, *see* 14 M.R.S.A. § 704-A(1) (Westlaw through 2017 2d Reg. Sess. and 2d

4

Spec. Sess. of 128th Leg.), the minimum contacts doctrine controls. "Due process requires that the defendant have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Scrutinizer*, 905 F.3d at 7 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "Consistent with the demands of due process, a federal district court may exercise either general or specific jurisdiction over a defendant." *Baskin-Robbins*, 825 F.3d at 35. Alexys contends that both general and specific jurisdiction exist here. ECF No. 25 at 9-13.

### A. General Jurisdiction

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts[.]" *Swiss Am. Bank*, 274 F.3d at 618 (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)). "To permit the exercise of general jurisdiction, the defendant must engage in the continuous and systematic pursuit of general business activities in the forum state." *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010). Here, Field Manning's contacts with Maine are "manifestly insufficient" to subject the law firm to general jurisdiction. *163 Pleasant St. Corp.*, 960 F.2d at 1088. None of Field Manning's attorneys are licensed to practice law in Maine and the record contains no facts demonstrating that Field Manning conducted any activities in Maine outside of the limited contact related to the transfer of the Maine Property, let alone activities that are continuous and systematic. *Cf. Cossaboon*, 600 F.3d at 33-39 (holding that New Hampshire could not exercise general jurisdiction over Maine hospital that "engage[d] in some advertising of its services [in New Hampshire],

maintain[ed] an interactive website, had one New Hampshire-based employee for a time . . . and treat[ed] some New Hampshire residents.").

## B. Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Swiss Am. Bank*, 274 F.3d at 618. For specific jurisdiction, "the minimum contacts inquiry has three prongs: relatedness, purposeful availment, and reasonableness." *Scrutinizer*, 905 F.3d at 7. A plaintiff must therefore show that: (1) "the claim directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) "the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) "the exercise of jurisdiction is reasonable." *Baskin-Robbins*, 825 F.3d at 35 (internal quotation marks omitted). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999).

Because "[q]uestions of specific jurisdiction are always tied to the particular claims," I first review the claims asserted against Field Manning in the Second Amended Complaint. *Id.* at 289. Those claims include: fraud against the trusts and estate (Count Five),[1] violation of the Maine Fraudulent Transfer Act (Count Seven), constructive trust (Count Eight), and punitive damages (Count Nine). In support of

---

[1] The Second Amended Complaint skips from Count Three to Count Five. Although the counts are mislabeled, I refer to them by the numbers set out in the Second Amended Complaint for ease of reference.

6

those claims, the Second Amended Complaint alleges that: (1) Field Manning helped Rita perpetrate fraud by preparing the documents to create Killybegs, LLC and the deed of transfer for the Maine Property, which Field Manning filed in the York County Registry of Deeds; (2) Field Manning failed to disclose to Alexys and to a Texas District Court, during a prior lawsuit, the transfer of the Maine Property and other details about the Killybegs, LLC Company Agreement, and also made false representations about the handling of trust assets; (3) Field Manning assisted Rita in making fraudulent transfers; and (4) Field Manning accepted legal fees that were paid from trust assets and otherwise "obtained monies" from the trusts. ECF No. 11 ¶¶ 132, 136.

### i. Relatedness

I must first determine whether the claims against Field Manning directly arise out of or relate to Field Manning's forum activity. Based on the Second Amended Complaint, Field Manning's only contact with Maine was the mailing of the deed of transfer to the York County Registry of Deeds. The supplemental materials filed by Field Manning also show that Field Manning assisted in registering Killybegs, LLC as a foreign corporation in Maine, but that the law firm did so indirectly. *See* ECF No. 21-7 ¶ 10; ECF No. 21-11. Attorney Cleavinger states in her affidavit that Field Manning sent the required paperwork to BlumbergExcelsior in Austin, Texas, and that BlumbergExcelsior then took the remaining steps to register Killybegs, LLC as a foreign corporation in Maine. ECF No. 21-7 ¶ 10. Sending mail into the forum state constitutes "a jurisdictional contact." *Swiss Am. Bank*, 274 F.3d at 622 (citing *Sawtelle*, 70 F.3d at 1389-90). Because Field Manning did not actually mail the

application to register Killybegs, LLC as a foreign corporation into Maine, the question here is whether Alexys' claims arise out of the action that Field Manning took when it mailed the transfer deed for the Maine Property to the York County Registry of Deeds.

Alexys argues that the creation of the LLC and the transfer of the Maine Property had an effect in Maine by "chang[ing] the rights of owners of real property located within the State of Maine." ECF No. 25 at 11. This argument is similar to the one advanced by the plaintiffs in *Sawtelle*, 70 F.3d at 1390. In that case, the plaintiffs filed a malpractice suit in New Hampshire against their non-resident attorneys, one from Virginia and one from Florida, claiming that the attorneys had negligently negotiated an inadequate settlement in a Florida lawsuit. *Id.* at 1387-88. The attorneys were never physically present in New Hampshire and were not licensed to practice law there, but they communicated the settlement offer to their clients via a letter sent to New Hampshire and advised them to accept the offer via telephone. *Id.* The "gravamen" of the plaintiffs' claim was, therefore, "that they suffered in [the forum state] the 'effects' of the defendants' negligence committed elsewhere." *Id.* at 1390. The First Circuit concluded that "the plaintiffs' showing of relatedness should be characterized as tenuous at best" where "the only relevant contacts with the forum" were communications that "were ancillary to the allegedly negligent non-forum activities[.]" *Id.* at 1390-91.

The same is true here. The mailing of the deed is ancillary to the wrongful acts alleged to have occurred in Texas because Alexys' claims of fraud against Field Manning do not arise directly from the registration of the deed to the Maine Property.

Rather, the claims arise from various actions that Field Manning took outside of Maine, including preparing the required paperwork to assist their client, Rita, in the creation of Killybegs, LLC, and the execution of the deed which transferred the Maine Property to the LLC. It is those actions that Alexys argues perpetrated a fraud, and both took place in Texas. Therefore, Alexys' showing of relatedness is tenuous at best and, accordingly, is insufficient to satisfy the relatedness prong.

Because I conclude that the first prong of the test for specific jurisdiction is not satisfied, I need not evaluate the second and third prongs. *Swiss Am. Bank*, 274 F.3d at 625. For the sake of thoroughness, however, I proceed to analyze the remaining prongs and address the parties' arguments regarding those requirements.

### ii. Purposeful Availment

"The purposeful availment inquiry asks whether a defendant has deliberately target[ed] its behavior toward the society or economy of a particular forum," which "guarantees that a defendant will not be subjected to the exercise of jurisdiction based solely on random, isolated or fortuitous contacts with the forum state." *Baskin-Robbins*, 825 F.3d at 36 (internal quotation marks omitted). "The main ingredients of purposeful availment are voluntariness and foreseeability." *Id.* Voluntariness requires that the defendant's contact with the forum state result from its own actions, or in other words, that the contact is deliberate and "not based on the unilateral actions of another party." *Prairie Eye Ctr.*, 530 F.3d at 28 (internal quotation marks omitted). Foreseeability requires that the contact with the forum state "be such that [the defendant] could 'reasonably anticipate being haled into court there.'" *Adelson*

*v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, Field Manning's contact with Maine was voluntary in that Field Manning mailed the deed to the York County Registry of Deeds as part of the legal services that it provided to its client, Rita. But this single contact with Maine was not such that the law firm could reasonably anticipate being haled into court here. An out-of-state law firm's mailing of a deed to be recorded in Maine does not, without more, create a reasonable expectation that the firm will be subjected to a lawsuit in Maine. Therefore, the law firm's involuntary presence before this state's courts was not foreseeable.

Alexys argues, without citing any legal support for the proposition, that litigation in Maine is foreseeable because Field Manning "participated in the practice of law in the State of Maine" by preparing the deed to the Maine Property, paying the filing fee to register the deed, and "register[ing] the LLC to do business in the State of Maine as a foreign LLC." ECF No. 25 at 12. "Under Maine law, persons are guilty of the unauthorized practice of law if they practice law or hold themselves out to practice law while not being admitted to the bar." *Bd. of Overseers of the Bar v. MacKerron*, 581 A.2d 424, 425 (Me. 1990) (citing 4 M.R.S.A. § 807 (Supp. 1989); *see also* 4 M.R.S.A. § 807(1) (Westlaw through 2017 2d Reg. Sess. and 2d Spec. Sess of 128th Leg.). Viewed in the light most favorable to Alexys as the nonmoving party, the allegations in the Second Amended Complaint and other filings in the record do not show that Field Manning held itself or its lawyers out as being licensed to practice

law in Maine, or otherwise engaged in acts that would constitute the unauthorized practice of law in Maine.

Field Manning's contact with Maine can fairly be characterized as "isolated," *see Baskin-Robbins*, 825 F.3d at 36, and is not enough to create a reasonable expectation that the law firm would be subjected to suit here. Therefore, the purposeful availment prong of the test for specific jurisdiction is not satisfied.

### iii. Reasonableness

Finally, I assess whether the exercise of jurisdiction over Field Manning is "fair and reasonable." *Id.* at 40. This analysis turns on five factors: "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* I consider each in turn.

First, Field Manning would be burdened were it required to appear in Maine because its place of business is in Texas. But "defending in a foreign jurisdiction almost always presents some measure of inconvenience, and hence this factor becomes meaningful only where a party can demonstrate a special or unusual burden." *Sawtelle*, 70 F.3d at 1395 (internal quotation marks omitted). Field Manning shareholder W.J. Wade, Jr., states in his affidavit that Field Manning has only one office, located in Lubbock, Texas, and Field Manning argues that the expense of appearing in Maine would impose a great burden. Field Manning's "center of gravity," however, is not so far from Maine as to constitute a special or unusual

burden. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) (collecting cases dismissed on grounds of unreasonableness where defendants from foreign countries such as Japan, Sweden, and the Philippines were sued in the United States). Therefore, Field Manning's burden of appearing in Maine "weighs only modestly in its favor." *Baskin-Robbins*, 825 F.3d at 40.

Second, Maine does not have a compelling interest in adjudicating the parties' dispute. Although a forum state does have an interest in the disposition of real estate within its borders, *see Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994), Alexys has requested leave to amend her complaint so that it does not implicate the title to the Maine Property, *see* ECF No. 33 at 33, which necessarily lessens Maine's interest. Furthermore, a forum state's interest is not compelling where the "suit stem[s] from an injury that occurred outside of its borders." *Sawtelle*, 70 F.3d at 1395; *see also Ticketmaster-New York*, 26 F.3d at 211 (concluding that forum state's interest in the litigation was "arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum"). Here, as discussed above, the alleged injury occurred in Texas.

Third, Alexys' interest in obtaining convenient and effective relief also does not weigh in favor of this Court exercising specific jurisdiction over Field Manning. Because Alexys is a citizen of Florida, it is no more convenient for her to litigate this suit in Maine than it would be in Texas, where Field Manning is subject to general jurisdiction.

The fourth and fifth factors require me to consider the judicial system's interest in obtaining the most effective resolution of the controversy and the common interests

of all sovereigns in promoting substantive social policies. Here, neither of those factors weighs heavily in one direction or another. Field Manning argues that the interest of the judicial system would be served by litigating the case in Texas, where Field Manning and all of its witnesses are located, but that fact does not tip the scales in its favor. *See Sawtelle*, 70 F.3d at 1395. Policy considerations similarly do not cut in either direction.

Viewing the reasonableness factors in total, I conclude that Alexys has not met her burden of demonstrating that it would be fair and reasonable for this Court to exercise specific personal jurisdiction over Field Manning.

### III. CONCLUSION

For the reasons discussed above, I conclude that none of the three prongs required to make the exercise of specific personal jurisdiction over Field Manning proper in Maine are met. Having already determined that general jurisdiction over Field Manning does not exist, I conclude that this Court lacks personal jurisdiction over Field Manning. It is therefore **ORDERED** that Field Manning's Motion to Dismiss (ECF No. 21) is **GRANTED**. Field Manning is **DISMISSED** as a Defendant. Because I conclude that this Court lacks personal jurisdiction over Field Manning, I do not reach the law firm's argument regarding improper venue.

**SO ORDERED.**

**Dated this 22nd day of March, 2019.**

　　　　　　　　　　　　　　　　　　　　/s/ JON D. LEVY
　　　　　　　　　　　　　　　　　　　　CHIEF U.S. DISTRICT JUDGE