# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| ALEXYS GRACE O'SHEA DUNCAN, Individually and as a Beneficiary of the Will and Trusts of John J.C. O'Shea Jr., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:17-cv-00497-JDL |
| KATHLEEN M. O'SHEA, Individually and as Co-Executor of the Estate of Rita O'Shea, Co-Trustee of the Will and Trusts of John J.C. O'Shea Jr., et al., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND THE PLAINTIFF'S ORAL MOTION TO AMEND COMPLAINT

The Plaintiff, Alexys Grace O'Shea Duncan ("Alexys"), brings this action alleging breaches of fiduciary duties, fraud, and conversion, among other claims, related to the management of two trusts created by her grandfather's estate plan. The individual defendants, John J.C. O'Shea III, Kathleen M. O'Shea, and Brian C. O'Shea, are co-trustees of the trusts, along with their sister and Alexys' mother, Kelley O'Shea, who is not a party to this case. John, Kathleen, and Brian move to dismiss (ECF No. 20) Alexys' Second Amended Complaint for failure to join necessary

parties under Federal Rules of Civil Procedure 19 and 12(b)(7), for lack of subject-matter jurisdiction under Rule 12(b)(1), and for improper venue under Rule 12(b)(3).[1]

## I. BACKGROUND

The Second Amended Complaint alleges the following facts, which I treat as true for purposes of the motion to dismiss.

John J.C. O'Shea, Jr. ("John Jr.") and his wife Rita O'Shea ("Rita"), both of whom are deceased, had four children: John J.C. O'Shea III ("John III"), Kelley A. O'Shea ("Kelley"), Kathleen M. O'Shea ("Kathleen"), and Brian C. O'Shea ("Brian"). The Plaintiff, Alexys, is Kelley's daughter and, therefore, John Jr. and Rita's granddaughter. John Jr. passed away in 1996 and his will was probated in Lubbock County, Texas. The will created two trusts: the O'Shea Family Trust and the O'Shea Marital Trust. Rita inherited half of John Jr.'s community property under Texas probate law, and the other half was apportioned between the two trusts. Rita was the executor of John Jr.'s estate, the trustee of the two trusts, and the primary beneficiary of the two trusts during her lifetime.

Under the trusts' terms as established in John Jr.'s will, Rita, as the primary beneficiary, was entitled to distributions of trust income and principal to maintain her standard of living. As trustee, Rita also had the discretion to make distributions to John Jr.'s descendants[2] from the income and principal of the Family Trust to provide for their support.

---

[1] Co-Defendant Field, Manning, Stone, Hawthorne, & Aycock, P.C., joins the individual defendants' motion to dismiss under Rules 19 and 12(b)(7) for failure to join necessary parties and 12(b)(1) for lack of diversity and federal question jurisdiction. *See* ECF No. 21 at 1 n.1.

[2] A "descendant" is "[s]omeone who follows in the bloodline of an ancestor[.]" DESCENDANT, Black's Law Dictionary (10th ed. 2014).

2

**A.     The First Texas Lawsuit**

In 2008, Kelley came to believe that her mother, Rita, was misusing funds derived from the sale of trust assets by keeping all of the funds for herself instead of placing one-half of the proceeds in the trusts, as Kelley believed was required by the terms of the two trusts. Kelley filed suit against Rita in Texas District Court for Lubbock County in 2009 for breach of fiduciary duties, fraud, and conversion of trust assets. Defendant Field, Manning, Stone, Hawthorne & Aycock, P.C. ("Field Manning") represented Rita in the suit. Kelley won a partial judgment in February 2011, in which the court ordered Rita to repay approximately $250,000 to the Marital and Family Trusts. Alexys, Kelley's daughter, was not a party to the 2009 lawsuit and was a minor during the entirety of the litigation.

**B.     The Creation of Killybegs, LLC and Rita O'Shea's Death**

After John Jr.'s death, Rita and the Family Trust jointly owned a vacation house in Kennebunkport ("the Maine Property"). In March of 2009, Rita, individually and as Trustee of the Family Trust, conveyed the Maine Property to a Texas limited liability company, Killybegs, LLC, in consideration for a membership interest in the LLC. The current members of Killybegs, LLC are John III, Kelley, Kathleen, and Brian. Field Manning prepared the warranty deed that transferred the Maine Property to Killybegs, LLC, and it mailed the deed to be recorded in Maine. The Second Amended Complaint alleges that Rita formed Killybegs, LLC to protect the Maine Property from any potential future judgment that might be entered against her, that Killybegs, LLC is a "fake" LLC, and that its Company Agreement allows self-dealing and wrongful enrichment at the expense of the Family and Marital

Trusts' beneficiaries. It also alleges that Killybegs, LLC failed to maintain proper financial records throughout its existence, that Rita comingled her personal finances with the Maine Property's finances, and that Rita used trust funds to make improvements to the Maine Property.

Rita passed away in November 2013. John Jr.'s will instructed that upon Rita's death, the remaining assets in both the Family and Martial Trusts were to be divided into separate "Descendants' Trusts" to provide support for John Jr.'s descendants during his children's lifetimes. Under the terms of John Jr.'s will, any remaining assets in the Descendants' Trusts at the time of his childrens' deaths will vest in John Jr.'s grandchildren. Following Rita's death, John III, Kathleen, Brian, and Kelley became the co-trustees of the Marital and Family Trusts. Those trusts have not yet terminated, and the Descendants' Trusts have not yet been created, due to the various litigation that has enveloped the family.

## C. Kelley O'Shea's Complaint in Maine Superior Court

In 2014, Kelley brought suit against John III, Kathleen, Brian, and Killybegs, LLC, in York County Superior Court asserting claims similar to almost all of those alleged in this action. *See O'Shea v. O'Shea*, No. CV-14-157, 2018 WL 2291084, at *3 (Me. Super. Apr. 4, 2018).[3] In April 2018, the court ruled on multiple motions filed

---

[3] In her Superior Court complaint, Kelley alleged:

> (1) breach of fiduciary duty to the Trusts and [John Jr.]'s estate by Rita (Count I); breach of contract in the purchase of the Kennebunkport home against Brian, Kathleen, and Killybegs (Count II); breach of fiduciary duty against [Kathleen, John III, and Brian] as members of Killybegs (Count III); breach of fiduciary duty against Killybegs itself (Count IV); fraud against the Trusts and [John Jr.]'s Estate by [Kathleen, John III, and Brian] (Count V); conversion against all defendants (Count VI); violation of the Maine Fraudulent Transfer Act against all defendants (Count VII); constructive trust (Count VIII); and punitive damages (Count IX).

*Id.*

4

by the parties, including cross-motions for summary judgment. *Id.* at *12-13. The court's order narrowed several of Kelley's claims, but no party prevailed at the summary judgment stage. *Id.* *6-12. The case is still pending in York County Superior Court, with a trial expected to take place sometime in 2019.

### D. Alexys Grace O'Shea Duncan's Complaint in Texas District Court for Lubbock County

Sometime after Kelley's 2009 Texas lawsuit concluded, Alexys discovered that Rita had made several transfers of trust funds to her own bank accounts in Maine and Texas, and to Killybegs, LLC, Field Manning, and John III, Kathleen, and Brian, all of which, she alleges, violated the terms of the two O'Shea trusts. In total, Rita is alleged to have unlawfully transferred trust assets valued at almost three million dollars to herself and the defendants from 1996 to her death in November 2013. This sum includes the transfer of the Maine Property to Killybegs LLC, the transfer of a residence in Lubbock, Texas to Kathleen, and insurance payments, stock and cash transfers, and loans made for or to Killybegs, LLC, Brehon LC,[4] Field Manning, and the individual defendants.

In 2016, Alexys brought suit in Texas District Court for Lubbock County against John III, Kathleen, Brian, Brehon LC, and Field Manning, for breaches of fiduciary duty, fraud, conversion, and other claims. In response to Alexys' Motion to Compel Trust and Estate Accounting, the court issued an order ("the Accounting Order") granting Alexys' request for an accounting, but concluding that the earliest

---

[4] Brehon LC is a limited company whose sole asset is a horse farm in Lubbock, Texas. Rita transferred her interest and the trusts' interest in Brehon LC to Kathleen in a sale that Alexys alleges was for an amount far below its fair market value.

5

Alexys was entitled to an accounting of either the Family Trust or the Marital Trust was December 15, 2010, the date the trial in Kelley's first Texas lawsuit began. ECF No. 24-9 at 2. The court determined that, under the Texas Trust Code, Alexys was bound by the 2011 judgment issued in Kelley's case because "Kelley and [Alexys] had no conflict of interest at the time of that trial[.]" *Id*. About two months after the Accounting Order issued, Alexys voluntarily dismissed the action without prejudice. The Second Amended Complaint alleges that the Accounting Order violated Alexys' constitutional rights and seeks a declaratory judgment from this Court that "the laws of the State of Texas as interpreted by the Lubbock District Court, State of Texas, violated her rights under the 14th Amendment of the Constitution of the United States of America and that she retains her rights to claims against these defendants[.]" ECF No. 11 at 27.

**E.     The Instant Case**

Alexys initiated this action in December 2017. She then amended her complaint twice; the first amendment removed Killybegs, LLC, as a defendant. *See* ECF No. 6 at 2; *compare* ECF No. 1 at 1, *with* ECF No. 7 at 1. The Second Amended Complaint asserts that this Court has both diversity and federal question jurisdiction. With respect to diversity jurisdiction, the Second Amended Complaint, which seeks more than $500,000 in damages, alleges that Alexys is a resident of Florida, and that of the individual defendants, John III and Kathleen are residents of Texas, and Brian is a resident of California. Field Manning, the law firm defendant, is a professional corporation organized under the laws of Texas. *See* 28 U.S.C.A. § 1332 (West 2019). The Second Amended Complaint also asserts that

6

federal question jurisdiction exists over Alexys' claim that the Texas Accounting Order violated her 14th Amendment rights. *See* 28 U.S.C.A. § 1331 (West 2019).

The individual defendants—John III, Kathleen, and Brian—move to dismiss the Second Amended Complaint (ECF No. 20). The law firm defendant—Field Manning—has filed its own motion to dismiss (ECF No. 21), which I address in a separate order. In the course of briefing and arguing the individual defendants' motion, Alexys requested to amend her Second Amended Complaint, although she has not filed a formal motion to this effect. In her Memorandum in Opposition to the Individual Defendants' Motion to Dismiss (ECF No. 24), Alexys stated that after reviewing the motion she "realized that since she is not a member of Killybegs, LLC, its Managers/Directors do not owe her any duty simply as a beneficiary of the O'Shea Family Trust." ECF No. 24 at 9. Therefore, she expressed her intent to voluntarily dismiss Count Two against John III, Kathleen, Brian, and the Estate of Rita O'Shea for breach of fiduciary duty as managers and directors of Killybegs, LLC. *Id.* at 9-10. During oral argument, Alexys' counsel reiterated her intent to dismiss Count Two and asked for leave to amend more broadly to correct any inconsistencies between the Second Amended Complaint and representations that her counsel made during oral argument regarding the relief sought as to the Maine Property owned by Killybegs, LLC:

> I would agree with . . . the defendants . . . that there are places where the complaint contradicts with what we said here today, and as part of our response we've asked the Court's permission for leave to amend to correct the inconsistencies between what we've said here and what we've said in our response versus what is within the complaint itself to fix the issues that are apparent. Number one, we did state that we are not

> looking for a cancellation of the deed. The second complaint still does say that.

ECF No. 33 at 33.

## II. LEGAL ANALYSIS

I begin by addressing Alexys' oral motion to amend her Second Amended Complaint (ECF No. 32) and the individual defendants' argument that the Second Amended Complaint must be dismissed for failure to join Kelley and Killybegs, LLC as required parties who cannot be joined without depriving the Court of diversity of citizenship subject-matter jurisdiction. Next, I consider the individual defendants' argument that the Second Amended Complaint must be dismissed for lack of federal question subject-matter jurisdiction. Finally, I address the status of the individual defendants' remaining arguments regarding improper venue.

### A. Alexys' Motion to Amend the Second Amended Complaint

As described above, Alexys seeks to amend the Second Amended Complaint (ECF No. 11) in several respects which, at this moment, are largely undefined. I treat Alexys' written and oral requests together as a motion to amend the Second Amended Complaint under Federal Rule of Civil Procedure 15, rather than as a motion for voluntary dismissal under Rule 41(a). *See Taylor v. Brown*, 787 F.3d 851, 857-58 (7th Cir. 2015) (concluding that plain language of Rule 41(a) allows only voluntary dismissal of an entire action and proper vehicle for dismissing a single claim is Rule 15(a)); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687-88 (9th Cir. 2005) (concluding that Rule 41(a) "does not allow for piecemeal dismissals" and that "withdrawals of individual claims" against a defendant are governed by Rule 15);

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004) (same). Rule 15(a) permits a party to amend its pleading with the court's leave, and directs that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)); *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008) (describing standard for granting leave to amend as "liberal").

Alexys' motion to amend is made in direct response to the individual defendants' argument that the Second Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(7) for its failure to join Killybegs, LLC, and Kelley as indispensable parties under Fed. R. Civ. P. 19(b). Kelley is a member of Killybegs, LLC, ECF No. 20-2 at ¶ 3, and a citizen of Florida, which makes Killybegs, LLC, a citizen of Florida. *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125 (1st Cir. 2011) (per curiam) ("[T]he citizenship of a limited liability company 'is determined by the citizenship of all of its members.'") (quoting *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006)). Because Alexys is also a citizen of Florida, the joinder of either Killybegs, LLC, or Kelley as a defendant would destroy complete diversity. Therefore, the state law claims made in the Second Amended Complaint, which are dependent upon diversity jurisdiction, would be subject to dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction.

"Rule 19 lays out a two-step process[,]" which must be undertaken with an eye towards pragmatic and equitable considerations. *Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc.*, 889 F.3d 30, 37 (1st Cir. 2018); *see also Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 15-16 (1st Cir. 2008). First, Rule 19(a) requires the joinder of an absentee

without whom "a just adjudication" cannot be reached if that joinder is "feasible," meaning that it would not defeat subject-matter jurisdiction. *Delgado-Caraballo*, 889 F.3d at 36-37. "Questions under Rule 19(a) are fact-bound and driven by the nature of the issues before the court." *Bacardí Int'l Ltd. v. V. Suárez & Co.*, 719 F.3d 1, 9-10 (1st Cir. 2013). The court only reaches the second step if it determines that the absentee is a required party under Rule 19(a), but that joinder is not feasible because it would defeat the court's subject-matter jurisdiction. At the second step, the court must determine "whether, in equity and good conscience, the action should proceed among the existing parties," Fed. R. Civ. P. 19(b), or whether the absentee "is so indispensable that the court should dismiss the case for want of subject matter jurisdiction." *Picciotto*, 512 F.3d at 17. That decision is made based on the four factors set forth in Rule 19(b),[5] which courts must view "through the lens of equity and good conscience, ever mindful that the caselaw generally prefers that judges *not* dismiss suits." *Delgado-Caraballo*, 889 F.3d at 37 (internal quotation marks omitted, emphasis in original).

The convergence of two principles leads me to conclude that Alexys should be permitted to amend the Second Amended Complaint before the joinder requirements

---

[5] The four Rule 19(b) factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

of Rule 19 are applied in this case. First, "[f]ederal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." 7 Charles Alan Wright, et al., *Federal Practice and Procedure Civil* § 1609 (3d ed. 2018). Thus, a plaintiff may be permitted to restructure the relief he or she seeks to cure a defective complaint. *Id.* (observing that amending a complaint may be preferable to dismissal "when by restructuring the relief requested[, the] plaintiff is able to change the status of an 'indispensable' party to that of merely a Rule 19(a) party or otherwise prevent the ill effects of nonjoinder."). To that end, Rule 19(b)(2)(A)-(C) explicitly requires courts to consider whether any prejudice of nonjoinder "could be lessened or avoided by . . . [including] protective provisions in the judgment[,] shaping the relief[,] or other measures[.]" In addition, as Rule 19(b) states, the court's joinder decision is ultimately one based in "equity and good conscience." The court's application of Rule 19, therefore, "involve[s] the balancing of competing interests and must be steeped in pragmatic considerations." *Picciotto,* 512 F.3d at 14 (internal quotations omitted).

Second, the language of Rule 15 "reflects a liberal amendment policy." *ACA Fin. Guar. Corp.*, 512 F.3d at 55. Leave to amend should be freely given "absent an apparent or declared reason such as 'futility of amendment.'" *Rife v. One W. Bank, F.S.B.*, 873 F.3d 17, 20-21 (1st Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* at 21 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Here, I cannot adequately assess futility

11

because the nature of the requested amendment is unclear. I do not, therefore, make any judgment as to whether or not the new amended complaint will state a claim upon which relief can be granted.

Rule 15's liberal amendment policy, together with the policy disfavoring dismissals for nonjoinder, point to the conclusion that leave to amend should be granted here. I am mindful of the time and expense incurred by the Defendants in advancing their joinder argument as a reason to dismiss the Second Amended Complaint, but I conclude that as a matter of equity and good conscience, Alexys should have a final opportunity to amend her complaint to scale back her claims and the relief she seeks before her pleading is finally tested against the rigors of Rule 19.

Accordingly, Alexys' Oral Motion to Amend her Second Amended Complaint (ECF No. 32) is **GRANTED**, and the individual defendants' request for dismissal based on Alexys' failure to join Killybegs, LLC, and Kelley as required parties is **DENIED** as moot.

**B.     Federal Question Jurisdiction**

The Second Amended Complaint asserts federal question jurisdiction under 28 U.S.C.A. § 1331 based on Alexys' request for "judgment that the laws of the State of Texas as interpreted by the Lubbock District Court, State of Texas[,] violated her rights under the 14th Amendment of the Constitution of the United States of America and that she retains her rights to claims against these defendants[.]" ECF No. 11 at 27. She specifically asserts that the Texas District Court's Accounting Order, as described above, violated her rights to due process and equal protection of the law as guaranteed by the 14th Amendment. *Id.* ¶ 9. Not surprisingly, the individual

defendants contend that the federal question presented by the Second Amended Complaint is a thinly-veiled attempt to collaterally attack the Texas state court's order by asking this Court to review it, which is precluded by the *Rooker-Feldman* doctrine. ECF No. 20 at 13-14; *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The individual defendants also contend that the Texas court's Accounting Order is entitled to full faith credit and, therefore, has preclusive effect as to the issue it decided.[6] ECF No. 20 at 11-12.

Alexys responds to both arguments by emphasizing that she voluntarily dismissed the Texas proceeding, and that the dismissal was made without prejudice. ECF No. 24 at 6-7. It follows, she reasons, that an interlocutory order that preceded the dismissal is neither entitled to full faith and credit, nor does it give rise to a bar to federal question jurisdiction under the *Rooker-Feldman* doctrine. *Id.*

1. **Full Faith and Credit**

Turning first to the preclusive effect of the Accounting Order, the federal full faith and credit statute requires federal courts to afford state court judgments the same preclusive effect that they would have in the courts of the rendering state. *See* 28 U.S.C.A. § 1738 (West 2019). In *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985), the Court explained:

> This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes

---

[6] The individual defendants' motion to dismiss does not seek dismissal as to this or any of the claims made in the Second Amended Complaint on the basis of Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief may be granted. Thus, I offer no opinion as to whether the federal question pleaded in the Second Amended Complaint survives scrutiny under Rule 12(b)(6).

> beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.

*Id.* (internal quotation marks omitted). With regard to the preclusive effect of the interlocutory order at issue here, the individual defendants argue that "[w]hen a Texas state court action is dismissed—whether voluntarily or involuntarily—leaving no parties or issues before the court, an order of dismissal becomes a final judgment subject to appeal." ECF No. 26 at 3.

Under Texas law, a party "seeking to assert res judicata in Texas courts must prove, inter alia, 'a prior *final* determination on the merits by a court of competent jurisdiction.'" *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 730 (5th Cir. 2011) (quoting *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010)) (emphasis in original). Under Rule 162 of the Texas Rules of Civil Procedure,[7] a voluntary dismissal or non-suit does not act as an adjudication on the merits. *See McGowen v. Huang,* 120 S.W.3d 452, 462 (Tex. App. 2003) ("A non[-]suit without prejudice does not adjudicate the rights of the parties but merely places them in the positions in which they would have been, had suit not been brought."); *see also KT Bolt Mfg. Co. v. Tex. Elec. Cooperatives, Inc.,* 837 S.W.2d 273, 275 (Tex. App. 1992) ("The taking of a voluntary non-suit does not constitute a litigation of the issues in a case, and does not prejudice the parties against seeking the same relief in a subsequent suit."). Therefore, the interlocutory order which Alexys wishes to challenge in this federal proceeding is not a final determination on the merits under

---

[7] Tex. R. Civ. P. 162 is entitled "Dismissal or Non-Suit" and provides in relevant part: "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes."

Texas law.[8] As such, and contrary to the individual defendants' argument, the interlocutory order has no preclusive effect and is not entitled to full faith and credit. *See Newman v. Krintzman*, 723 F.3d 308, 310 (1st Cir. 2013) (recognizing that under the full faith and credit requirement, federal courts give preclusive effect to state court judgments if the courts of the rendering state would do the same).

### 2. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine serves to preserve "the Supreme Court's exclusive jurisdiction over appeals from final state-court judgments, by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court[.]" *Klimowicz v. Deutsche Bank Nat. Trust Co.,* 907 F.3d 61, 64-65 (1st Cir. 2018) (internal citations and quotation marks omitted). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments [that were] rendered before the [federal] district court proceedings commenced and invit[e] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under the doctrine, "federal district courts lack jurisdiction over federal complaints that essentially invite federal courts of first instance to review and reverse unfavorable state-court judgments." *Federación de Maestros de P.R. v. Junta de Relaciones del*

---

[8] None of the Texas case authorities cited by the individual defendants address whether there is any preclusive effect associated with an interlocutory order entered in a case that is later voluntarily dismissed without prejudice. *See Smith v. City of Garland*, 523 S.W.3d 234, 239 (Tex. App. 2017) (concluding that a party denied intervention may not appeal from the trial court's order before the entry of a final judgment); *Deadmon v. Dallas Area Rapid Transit*, 347 S.W.3d 442, 444 (Tex. App. 2011) (ruling that "[a] judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record."); *Kenseth v. Dallas Cty.*, 126 S.W.3d 584, 597 (Tex. App. 2004) (concluding that "appellants cannot—in this proceeding—collaterally attack orders that they failed to appeal in a timely way."); *City of Arlington v. Texas Elec. Serv. Co.*, 540 S.W.2d 580, 582 (Tex. Civ. App. 1976, *writ refused NRE* (Mar. 23, 1977)) (concluding that the trial court's denial of the motion to abate and dismiss was not subject to interlocutory appellate review under Texas rules).

*Trabajo de P.R.*, 410 F.3d 17, 20 (1st Cir. 2005) (internal alterations and quotation marks omitted).

As the First Circuit explained in *Federación de Maestros de Puerto Rico,* which concerned an interlocutory order, the application of the *Rooker-Feldman* doctrine does not turn on the finality, appealability, or preclusive effect of the state court order or judgment, but rather on whether the state proceeding has "ended" with respect to the federal issue. *Id.* at 19, 27. Courts "examine the posture of the case in the state court—i.e., whether 'state proceedings [have] ended,'—and the relief sought in the federal court." *Id.* at 27 (quoting *Exxon Mobil Corp.*, 544 U.S. at 291). "[I]f the state action has reached a point where neither party seeks further action, then the state proceedings have . . . 'ended.'" *Id.* at 24. Here, there is no question that Alexys' voluntary dismissal of the Texas court state proceeding brought the case to an end.

Furthermore, the First Circuit explicitly recognized in *Federación de Maestros de Puerto Rico* that an interlocutory order entered in a state action that is later voluntarily dismissed cannot be challenged in a subsequent federal action under *Rooker-Feldman*:

> [W]here the lower state court does not issue a judgment but merely an interlocutory order (e.g., a discovery order determining whether certain documents were privileged), and the parties then voluntarily terminate the litigation . . . the state proceedings have ended, and the *Rooker-Feldman* doctrine precludes either party from later challenging the order in federal court.

*Id.* at 24 n.10 (emphasis omitted). Accordingly, Alexys' arguments that the *Rooker-Feldman* doctrine does not apply because the Texas court's Accounting Order was, in her words, "a discovery order and not a final judgment subject to appeal," and because the proceeding was voluntarily dismissed without prejudice are all unavailing. ECF

No. 24 at 7. The Accounting Order was entered in a case that has "ended" for purposes of applying the *Rooker-Feldman* doctrine.

Accordingly, the individual defendants' request to dismiss the federal question claim in the Second Amended Complaint is **GRANTED** because this Court lacks subject-matter jurisdiction over the claim under the *Rooker-Feldman* doctrine.

**C.    Improper Venue**

Finally, the individual defendants contend that venue is inappropriate in the District of Maine under the criteria set forth in 28 U.S.C.A. § 1391(b) (West 2019) and that the case should therefore be dismissed under Rule 12(b)(3). In determining whether venue in a given jurisdiction is proper, courts "look not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir.2001)) (internal quotation marks omitted). This "approach takes a holistic view of the acts underlying a claim." *Id.* (quoting *Uffner*, 244 F.3d at 43 n.6) (internal quotation marks omitted). The venue determination, therefore, focuses upon the particular claims asserted in the complaint and the facts underlying each. Because I have granted Alexys leave to amend her complaint, it would be premature to determine venue at this stage in the litigation based on the claims in the Second Amended Complaint.

### III.  CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

1. John III, Kathleen, and Brian O'Shea's First Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 20) is **GRANTED IN PART**, as to the Plaintiff's claims arising under the 14th Amendment of the Constitution of the United States, which are **DISMISSED** for lack of federal question subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

2. Alexys Grace O'Shea Duncan's Oral Motion to Amend Complaint (ECF No. 32), which reiterates her prior request for leave to amend, is **GRANTED**; and

3. Having granted the Plaintiff's motion to amend the Second Amended Complaint to remove or change allegations that impact the issues of joinder and diversity subject-matter jurisdiction, John III, Kathleen, and Brian O'Shea's First Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 20) is **DENIED IN PART** as moot on the issues of nonjoinder, Fed. R. Civ. P. 12(b)(7) and 19, and venue, Fed. R. Civ. P. 12(b)(3).

**SO ORDERED.**

**Dated this 22nd day of March, 2019.**

/s/ JON D. LEVY
**CHIEF U.S. DISTRICT JUDGE**